[No. 18960½. Department One. April 23, 1925.]

LULA PETERSON, *Respondent*, v. NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, *Appellant*.[1]

APPEAL (406)—NEW TRIAL (2)—REVIEW—DISCRETION—GRANT OF NEW TRIAL FOR INSUFFICIENCY OF EVIDENCE. An order granting a new trial for insufficiency of the evidence to sustain the verdict will be reviewed on appeal where there is no substantial dispute in the evidence, which was practically all taken by deposition (PARKER, J., dissenting).

DEATH (1)—PRESUMPTIONS FROM ABSENCE—TIME OF DEATH— QUESTION FOR JURY. The sudden disappearance and absence of a man for seven years raises a presumption of death, the time thereof being a question for the jury; and in an action for insurance, where it appears that the man was kind and affectionate and devoted to his wife and children, and left ostensibly upon a business trip from which he did not return, the trial court is not justified in setting aside the verdict of a jury which drew the inference from the evidence that the insured died prior to the expiration of the insurance policy.

DEATH (1)—PRESUMPTIONS FROM ABSENCE—TIME OF DEATH—INSTRUCTIONS. In an action upon a life insurance policy, based upon the presumption of death from seven years' absence of the insured,

[1]Reported in 235 Pac. 15.

it is proper to instruct that the law presumes the death of the insured after seven years' absence without tidings, but that the burden of proof is upon the plaintiff to show that the insured died before the expiration of the policy.

Appeal from an order of the superior court for King county, Ronald J., entered April 4, 1924, granting a new trial, after the verdict of a jury rendered in favor of the defendant, in an action on a life insurance policy. Reversed.

*Wright, Froude, Allen & Hilen,* for appellant.
*L. C. Stevenson* and *Harry J. Kuen,* for respondent.

MAIN, J.—The plaintiff, the beneficiary named in a life insurance policy, brought this action to recover thereon, claiming that the insured was dead. The cause was tried to the court and a jury and resulted in a verdict in favor of the defendant. From the order granting a new trial, the defendant appeals.

The respondent, Lula Peterson, and George H. Peterson were married in 1908, and thereafter resided at Sioux Falls, South Dakota, until September 29, 1915, when Mr. Peterson disappeared and has not since been heard from. The present action was begun on September 19, 1923, more than seven years after the disappearance. By the terms of the policy, it expired on August 20, 1919.

One of the grounds of the new trial was insufficiency of the evidence to justify the verdict. To sustain the ruling of the trial court, the respondent relies upon that class of cases which hold that, where the evidence is in substantial conflict and the trial court grants a new trial, this court will not disturb the holding in the absence of an abuse of discretion. *Austrem v. American Sav. Bank & Trust Co.,* 122 Wash. 399, 210 Pac. 781; *Alberts v. Rasher, Kingman, Herrin,* 128 Wash. 32, 221 Pac. 975. There are a number of other cases

to the same effect, but it is unnecessary to assemble them here. The facts in the present case do not bring it within that rule. Here the evidence was not in conflict. With the exception of one witness, it was all taken on depositions. The question which the jury had to determine was not as between two conflicting lines of testimony, but whether there were facts and circumstances shown by the evidence from which it could properly be inferred that Mr. Peterson died before August 20, 1919, the date when the term of the policy expired. There is a presumption that death has resulted when a party has been absent for seven years without tidings of his existence, but the time when death occurred is a question for the jury. *Butler v. Supreme Court of Foresters*, 53 Wash. 118, 101 Pac. 481, 26 L. R. A. (N. S.) 293; *Fordyce v. Modern Woodmen of America*, 129 Wash. 364, 225 Pac. 434. The burden of proving that death took place at any particular time within the seven years is on the person claiming a right to the establishment of which that fact is essential. 8 R. C. L., p. 711; *Clement v. Knights of Maccabees of the World*, 113 Miss. 392, 74 South. 287; *Solomon v. Redona*, 52 Cal. App. 300, 198 Pac. 643; *Bradley v. Modern Woodmen of America*, 146 Mo. App. 428, 124 S. W. 69; *Goodier v. Mutual Life Ins. Co. of New York*, 158 Minn. 1, 196 N. W. 662. The term of the policy, in the case now before us, expiring before the expiration of the seven-year period, it was incumbent upon the respondent, she bringing the action, to prove facts and circumstances from which the jury would be justified in finding that death took place before the expiration of the policy.

If the party disappearing had little regard for his family or friends, had no local attachments of any kind, was known to be on bad terms with his family or neglectful of it, or was in the habit of leaving home for

considerable periods of time, these circumstances would tend to diminish the presumption of death as the cause of disappearance. If, however, he was sober and industrious, with strong domestic attachments, considerate, kind, and affectionate to his family, and generally regardful of the rights of others, and disappears suddenly from or leaves his home and the community in which he lives and where his interests are, without any explanation, the jury would be justified in concluding that death was the cause of disappearance. In *Butler v. Supreme Court of Foresters, supra,* it was said:

"It seems to be well settled that the presumption of death attaches when a party has been absent for seven years without tidings of his existence. There is some conflict in authority as to the time at which death is presumed to occur under such presumption; but the great weight of authority is to the effect that that is a question of fact to be determined by the jury. In reaching a conclusion as to the time of death, much must necessarily depend upon the domestic attachment of the party. If it appears that the party had little regard for his family or friends, had no local attachments of any kind, was known to be on bad terms with his family or neglectful of it, or was in the habit of leaving his home for considerable periods of time without notifying his family or friends of his whereabouts, these circumstances would tend to diminish the presumption of death as the cause of the disappearance. But where the party is known to be sober and industrious, with strong domestic attachments, considerate, kind, and affectionate to his family, and generally regardful of the rights of others, and disappears suddenly from or leaves his home and the community in which he lives and where his interests are, without any explanation; these are circumstances so strong that, without more, the jury would be justified in concluding that death was the cause of his disappearance."

In this case, on the morning of September 29, 1915, Mr. Peterson, bidding his wife good-bye, started osten-

sibly on a few days' business trip. He was then an insurance solicitor, which business he had been engaged in for about a year at that time. Before entering the insurance business he was a clerk in a clothing store. He was kind and affectionate and apparently devoted to his wife. His father and mother lived in the same town and the family relations were exceedingly agreeable. On the day of his disappearance, Mr. Peterson, from Garretson, South Dakota, telegraphed his father at Sioux Falls asking him to deposit $75 in a bank, "as he was going away to try to get some money and would square it when he got home." About this same time he borrowed $10 from a friend in Minneapolis, stating that he wanted it to pay his railroad fare to Sioux Falls, his home. For some months prior to the date of the disappearance, the respondent's brother, his wife, two children and the insured's mother-in-law had been living with Mr. and Mrs. Peterson. The father of George H. Peterson, when asked his opinion as to why his son left Sioux Falls, said: "While I am not certain, my private opinion is that the White family coming there and staying there was somewhat a reason for it. That is the nearest I can answer it." About a year previous to his disappearance, Mr. Peterson had had some financial trouble with the clothing company by which he was then employed, which resulted in his discharge.

Whether the facts are sufficient to take the question to the jury as to whether Mr. Peterson died prior to the expiration of the policy, it is not necessary here to determine. The facts, however, are such that the trial court was not justified in setting aside the verdict of the jury. As stated, the evidence was by deposition, with the exception of one witness, and the facts were not in dispute. The inference which the jury drew in finding for the defendant should not be disturbed.

Another ground of the motion for a new trial was error in the instructions. The jury were instructed that the burden of proving that Mr. Peterson's death had occurred prior to August 20, 1919, the date of the expiration of the policy, was upon the respondent, and that the law presumes, after seven years' absence without tidings, that a party is dead, but does not presume that he died before a certain date or after a certain date. Under the authorities, this instruction embodied a correct statement of the law. The respondent's chief reliance for sustaining the granting of the new trial apparently is upon the other ground. It is contended, however, that the instruction was confusing and misleading. To us the instruction seems plain and correct. The jury could not have been misled by it as to what the law was.

It follows that the judgment must be reversed, and the cause remanded with direction to the superior court to enter a judgment upon the verdict of the jury.

TOLMAN, C. J., BRIDGES, and ASKREN, JJ., concur.

PARKER, J. (dissenting)—I cannot concur in the view that the trial court abused its discretion in awarding a new trial. I can hardly conceive of a court abusing its discretion in awarding a new trial on the ground that the verdict is against the weight of the evidence, except possibly when the evidence conclusively calls for the verdict rendered. I therefore dissent.